UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DR. NELAYDA FONTE,

    Plaintiff,

v.                                             Case No.: 2:19-cv-54-FtM-38NPM

LEE MEMORIAL HEALTH SYSTEM
and DR. VENKAT PRASAD,

    Defendants.
_____/

## **OPINION AND ORDER**[1]

Before the Court is Defendant Lee Memorial Health System ("LMHS") and Dr. Venkat Prasad's Motion to Dismiss (Doc. 11), Plaintiff Dr. Nelayda Fonte's response in opposition (Doc. 20), Defendants' reply (Doc. 23) and Fonte's sur-reply (Doc. 25). For the following reasons, the Court grants the motion in part and denies it in part.

## **BACKGROUND**

LMHS employed Fonte as a surgeon for over twenty years. Late last year, Fonte took approved leave under the Family and Medical Leave Act ("FMLA"). Four days after she returned to work, Prasad fired her. Prasad is LMHS' chief medical officer. Fonte now sues LMHS and Prasad for unlawful interference and retaliation under the FMLA.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink stops working or directs the user to some other site does not affect the opinion of the Court.

1

Defendants move to dismiss the suit because LMHS has Eleventh Amendment sovereign immunity and Prasad cannot be held individually liable.

## STANDARD OF REVIEW

"An assertion of Eleventh Amendment immunity essentially challenges a court's subject matter jurisdiction: 'The Eleventh Amendment restricts the judicial powers under Article III, and Article I cannot be used to circumvent the constitutional limitations placed on federal jurisdiction.'" *Seaborn v. State of Fla., Dep't of Corrections*, 143 F.3d 1405, 1407 (11th Cir. 1998) (quoting *Seminole Tribe v. Florida*, 517 U.S. 44, 72-73 (1996)). The Federal Rules of Civil Procedure allow a defendant to dismiss a pleading for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). An attack on jurisdiction can be facial or factual. See *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). Defendants make a facial attack. (Doc. 11 at 3; Doc. 20 at 3-4). "Facial attacks on the complaint require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis for subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion." *Lawrence*, 919 F.2d at 1529 (internal quotation marks omitted). "[A] plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true." *Id.*

## DISCUSSION

**A. Eleventh Amendment immunity**

The Eleventh Amendment protects a nonconsenting State from suit in federal court by its own citizens. U.S. Const. amend. XI; *cf. Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 39 (1994) (stating "Eleventh Amendment jurisprudence emphasizes the

integrity retained by each State in our federal system"). But Eleventh Amendment immunity is not absolute. "Under the traditional Eleventh Amendment paradigm, states are extended immunity, counties and similar municipal corporations are not, and entities that share characteristics of both require a case-by-case analysis." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1136 (11th Cir. 2019) (internal quotations omitted). For hybrid entities, sovereign immunity extends to those that act as an "arm of the State" and not as an arm of the county. *See Manders v. Lee,* 338 F.3d 1304, 1308 (11th Cir. 2003); *Stanley v. Israel*, 843 F.3d 920, 924 (11th Cir. 2016). LMHS argues it is an arm of Florida, and thus it has Eleventh Amendment immunity from this suit.[2]

Courts use a four-factor test to determine arm-of-the State issues: "(1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Manders*, 338 F.3d at 1309 (citations omitted). The party claiming immunity must show the factors weigh in its favor. *See Miller v. Advantage Behavioral Health Sys.*, 677 F. App'x 556, 559 (11th Cir. 2017). The factors are also evaluated considering "the particular function the defendant was engaged [in] when taking the actions out of which

---

[2] The parties also discuss how sovereign immunity can be waived. And the law is well-settled that Florida has retained its sovereign immunity for FMLA claims. *See e.g.,* Fla. Stat. § 768.28 (waiving Florida's sovereign immunity from tort actions brought in its own courts—but not federal courts—with certain limitations); *Hamm v. Powell*, 874 F.2d 766, 770 n.3 (11th Cir. 1989) (holding § 768.28 does not waive Florida's Eleventh Amendment immunity). Nor has Congress abrogated immunity for claims under the FMLA's self-care provisions, like at issue here. *See Coleman v. Court of Appeals of Maryland*, 566 U.S. 30, 43 (2012) (holding Congress did not abrogate the states' Eleventh Amendment immunity from suit under the FMLA's self-care provision); *Cotora v. Lee Cty.*, No. 2:10-cv-775-FTM29, 2012 WL 2996550, at *3 (M.D. Fla. July 23, 2012) (dismissing a plaintiff's FMLA self-care retaliation claim because of sovereign immunity).

liability is asserted to arise." *Manders*, 338 F.3d at 1308; *Freyre v. Chronister*, 910 F.3d 1371, 1380 (11th Cir. 2018).  Here, that function is Prasad firing Fonte.

But LMHS claims that the *Manders* analysis is unnecessary because it has twice been granted sovereign immunity.  (Doc. 23 at 1 (stating "this Court has analyzed the same legal question (Eleventh Amendment sovereign immunity) applied to the same public entity (Lee Health) and determined that Lee Health is immune from suit." (emphasis in original)).  LMHS relies on two Middle District of Florida cases: *Gillies v. Lee Mem. Health Sys.*, No. 2:13-cv-442-FtM-29DNF, 2014 WL 4071673, at *1 (M.D. Fla. Aug. 18, 2014) and *Lalone v. Lee Mem. Health Sys. Foundation, Inc.*, No. 2:11-cv-417-UA-DNF (ECF No. 12) (M.D. Fla. Jan. 20, 2012).  Neither case is as advertised.

In *Gillies*, LMHS moved to dismiss an age discrimination suit under the Eleventh Amendment.  The district court denied the motion as moot because it granted the plaintiff's request for leave to amend the complaint.  In doing so, the court commented that "it seems unlikely plaintiff can plead around sovereign immunity." 2014 WL 4071673, at *1.  From this offhand remark, LMHS declares itself immune from suit.  The court's comment, however, is a far cry from determining that the Eleventh Amendment applies.  At best, it represents dicta.

*Lalone* fares no better.  There, the court dismissed a wage and hour suit because LMHS' status as a political subdivision gave it sovereign immunity.  But the three-page decision gave no arm-of-the-State analysis under *Manders*, which is problematic.  *See Silberman*, 927 F.3d at 1137 (criticizing the court for not "even allud[ing] to the four-factor test").  The court simply found sovereign immunity based on LMHS' uncontested status as a political subdivision.  *Lalone* has no binding or instructive effect here.

4

LMHS does not stop there. It also cites *F.T.C. v. Hosp. Bd. of Directors of Lee Cty.*, 38 F.3d 1184 (1994) to argue "the Eleventh Circuit explicitly recognized Lee Health's status as an arm of the state." (Doc. 23 at 2). Not so. The Federal Trade Commission sued Lee Memorial for antitrust violations under the Sherman Act. At issue was whether Lee Memorial could have state-action immunity under federal antitrust law—not Eleventh Amendment immunity. 38 F.3d at 1186; *cf. Diverse Power, Inc. v. City of Lagrange, Georgia*, No. 18-cv-11014, 2019 WL 3928624, at *3 (11th Cir. Aug. 20, 2019) ("The doctrine of state-action immunity insulates states from suit under the federal antitrust laws."). LMHS conflates the two principles. The Eleventh Circuit said Lee Memorial was a political subdivision in its state-action immunity analysis. It did not find Lee Memorial to have Eleventh Amendment immunity because it is a political subdivision. At bottom, no court has applied the *Manders* factors to any LMHS function.

Before starting the *Manders* analysis, two points offer context. First, LMHS did not address the factors until its reply brief. Even then, LMHS focused on refuting Fonte's points against immunity rather than arguing why the factors favor immunity. Second, both LMHS and Fonte overlook that the *Manders* analysis is function specific. The issue is "not simply whether [LMHS] acts as an arm of the state generally, but whether it does so when [firing doctors]." *Freyre*, 910 F.3d at 1380. Against this backdrop, the Court will address each *Manders* factor.

   1. *Characterization under state law*

Federal law controls whether an entity gets Eleventh Amendment immunity. To answer that question, however, the court must consider how state law defines the entity's character. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 430 n.5 (1997). "The more

5

that state law defines the entity as something resembling a political subdivision (such as a county or similar municipal corporation) rather than an arm of the state, the less likely it is that the entity will be entitled to Eleventh Amendment immunity." *U.S. ex rel. Kunz v. Halifax Hosp. Med. Ctr.*, No. 6:09-CV-1002-ORL-31, 2011 WL 2269968, at *3 (M.D. Fla. June 6, 2011).

LMHS says it is a political subdivision and an independent special district created by the Florida Legislature.[3] From there, it says that its powers and duties derive from Florida law. These arguments miss the relevant inquiry. Just because LMHS is labeled a political subdivision does not mean it has Eleventh Amendment immunity. What matters is the powers and functions that come with this label. LMHS does nothing to illustrate how its status as a "political subdivision" is akin to an arm of the state rather than a county. "The question is not whether [LMHS] is a state agency or instrumentality, but whether a state agency or instrumentality such as [LMHS] is entitled to Eleventh Amendment immunity." *Halifax*, 2011 WL 2269968, at *4.

LMHS also angles for immunity based on the Eleventh Circuit giving a *county* health department sovereign immunity in *Ross v. Jefferson Cty. Dep't of Health*, 701 F.3d 655 (11th Cir. 2012). There, the appellate court found an Alabama county health department to have immunity because Alabama case law clearly treated such boards as state agencies. 701 F.3d at 659. *Ross* examined the Alabama entity under Alabama case law, so it easily differs. Plus, the Eleventh Circuit had case law saying the county

---

[3] Under Florida's Uniform Special District Accountability Act, special districts are "units of local government created for a special purpose." Fla. Stat. § 189.012(6) (2014). And Florida law includes special districts in the meaning of political subdivisions. Fla. Stat. § 1.01(8) (2014).

6

was a state agency. Not the same here. LMHS cites no Florida case, nor has the Court found any, in which a Florida state court held LMHS (or a like entity) to be an arm of the State, especially for personnel decisions. See *Stanley*, 843 F.3d at 924 (explaining the *Manders* test is a "function-specific determination" in which the court is "not seeking to make a characterization of [ ] sheriffs that will hold true for every type of official action they engage in" (internal quotes and citation omitted)).

LMHS has done nothing to show that Florida law treats it as an arm of the State as opposed to a political subdivision on a local level. Accordingly, the first factor weighs against immunity.

*2. Florida's control over the LMHS*

The second *Manders* factor—degree of state control—also weighs against immunity. The Florida Legislature created LMHS to be a public health care system in Lee County. See Chapter 2000-439, Laws of Florida. It also formed the Lee Memorial Health System Board of Directors (the "Board") to govern LMHS and provide for its operation and maintenance. The Board has ten directors, who must be residents and registered voters of Lee County. LMHS is thus controlled by officials at the local level.

The Florida Legislature also deferred control over LMHS' medical staff to the Board:

> The [Board] shall establish and authorize a medical staff to direct and control practitioners with privileges to perform professional services in the hospitals and other facilities operated by the system board. The system board may establish bylaws, rules, and regulations governing the organization of such medical staffs, the appointment and reappointment of such medical staffs, the disciplining or removal of medical staff members, the delineation of medical staff privileges, the professional duties of members of the medical staffs, and such other matters as the system board

7

> may address so that the health and well-being of patients and the best interests of the hospital and other facilities authorized pursuant to this act may at all times be served. The system board shall have the ultimate authority regarding the medical staffs in the Lee Memorial Health System.

Chapter 2000-439, Laws of Florida, § 9. The Board can appoint a chief executive officer, who has "authority to see to the hiring or retention of such personnel as may be deemed necessary for the efficient management and operation[.]" Chapter 2000-439, Laws of Florida, § 12. The result is Florida has relinquished personnel decisions to LMHS, meaning the State has no direct or significant control over firing doctors.

To avoid this obvious conclusion, LMHS argues that Florida oversees it under the Uniform Special District Accountability Act. ([Doc. 23 at 5](Doc. 23 at 5)). The provision LMHS relies on, however, has nothing to do with the function at issue: firing doctors. And LMHS cites no provision or law in which Florida reviews or oversees its personnel decisions.

LMHS makes much about Lee County not having any oversight over its operations. Even if true, it does not necessarily follow that Florida does. *See [Port Auth. Trans-Hudson Corp. v. Feeney](Port Auth. Trans-Hudson Corp. v. Feeney)*, 495 U.S. 299, 313 (1990) (stating "when a State creates subdivisions and imbues them with a significant measure of autonomy, such as the ability to levy taxes, issue bonds, or own land in their own name, these subdivisions are too separate from the State to be considered its 'arms.' This is so even though these political subdivisions exist solely at the whim and behest of their State." (citation omitted)). LMHS has not shown Florida's control over its personnel decisions. Its control argument boils down to "I brought you into this world and I can take you out." This is not enough. LMHS has not met its burden on the second factor.

*3. LMHS' source of funding*

The third *Manders* factor asks where the entity derives its funds. LMHS argues the Florida Legislature has "set forth specific instructions for the disbursement, handling and investment" of LMHS' funds, and it may issue bonds, levy an ad valorem tax, or acquire property by eminent domain. (Doc. 23 at 7). These provisions, however, merely dictate ways to generate funds and what LMHS can or cannot do once it has the funds. They say nothing of how LMHS receives funding or what portions come from each source. LMHS has not shown that it receives any state funding or how any such funding relates to its personnel decisions. *See Manders*, 338 F.3d at 1324 (favoring immunity because Georgia mandated the county to fund the sheriff for the functions at issue). LMHS has yet again failed to meet its burden.

*4. Judgments against LMHS*

Finally, the fourth factor considers who is responsible for judgments against LMHS. According to LMHS, Florida Statute § 189.068(4)(f) says the Florida Legislature has general oversight procedures for special districts like LMHS that reviews an entity's financial condition that may need responsive action. Because this oversight indirectly implicates state funds, LMHS says Florida will "ultimately be tasked with addressing the effects of a significant adverse judgment." (Doc. 23 at 8). The Court is unpersuaded with this logic. Overseeing LMHS' financial solvency differs from being financially responsible for an adverse judgment. LMHS cites no law suggesting that Florida's funds are implicated in judgments against LMHS, which is the relevant inquiry. The fourth factor also weighs against immunity.

There is nothing before the Court to suggest that LMHS is an arm of the state for personnel decisions. Although LMHS may have some independence from Lee County, it has not shown that Florida exercises any control or financial responsibility over it. The Court thus denies LMHS' motion for sovereign immunity.[4]

**B. Prasad's individual liability under the FMLA**

Next, Prasad argues he cannot be sued in his individual capacity because binding precedent holds that a public official is not an "employer" under the FMLA. (Doc. 11 at 7). Prasad relies on *Wascura v. Carver*, 169 F.3d 683, 687 (11th Cir. 1999) for that principle. In *Wascura*, the Eleventh Circuit stated: "We hold that a public official sued in his or her individual capacity is not an 'employer' under the FMLA, and therefore there is no federal subject matter jurisdiction over such a claim. The district court should have dismissed the FMLA claim insofar as it is asserted against the defendants in their individual capacities." 169 F.3d at 687. Fonte argues "the reasoning of *Wascura* is flawed because under the FMLA, an employer equates to the public agency itself, as well as, 'any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer.'" (Doc. 20 at 14 (citation omitted)). Fonte does not challenge Prasad's status as a public official. And after considering the parties' arguments and applicable law, the Court is bound by *Wascura* and must grant the motion on Prasad's individual liability.

Accordingly, it is

---

[4] Fonte argues LMHS cannot claim Eleventh Amendment immunity when it did not raise sovereign immunity in other federal cases involving FMLA claims, and it wants the Court to take judicial notice of documents in those cases. (Doc. 20 at 13-14). The Court need not address this argument because it denies LMHS sovereign immunity on the merits.

10

**ORDERED:**

Defendant Lee Memorial Health System and Dr. Venkat Prasad's Motion to Dismiss (Doc. 11) is **GRANTED in part and DENIED in part.**

1. The motion is **denied** on Eleventh Amendment immunity but **granted** on Prasad's individual liability.

2. Defendant Lee Memorial Health System is **DIRECTED** to file an answer to the Complaint or before September 11, 2019.

**DONE** and **ORDERED** in Fort Myers, Florida on this 28th day of August 2019.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record