UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NELAYDA FONTE, Dr., an individual

        Plaintiff,

v.                                    Case No.:  2:19-cv-54-FtM-38NPM

LEE MEMORIAL HEALTH SYSTEM,

        Defendant.

_____/

## OPINION AND ORDER[1]

Before the Court is Defendant Lee Memorial Health System's Motion for Summary Judgment (Doc. 38), Plaintiff Dr. Nelayda Fonte's response in opposition (Doc. 44), and Lee Health's reply (Doc. 47).  The Court grants the Motion.

## BACKGROUND

This is a Family and Medical Leave Act ("FMLA") case.  Fonte worked at Lee Health as a trauma surgeon for over twenty years without incident.  Then, in March 2018, Fonte refused a trauma patient transfer from another hospital (the "March Call").  After an investigation, the relevant state agency (the "Agency") found that Fonte violated certain state and federal regulations (collectively "EMTALA" for ease of reference).  Separately, Lee Health conducted its own investigation, reaching similar conclusions and deciding Fonte also broke Lee Health policies related to patient transfers.  So Lee Health

---

[1] Disclaimer:  Documents hyperlinked to CM/ECF are subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them.  The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

disciplined Fonte with a final warning that any similar infraction would lead to termination (the "Final Warning").

Over six months later, Fonte was again on call when a hospital requested a trauma transfer (the "November Call"). The patient was a little boy in a horrible car accident (the "Boy"). In the ambulance, the Boy lost his pulse. So EMTs diverted route from Lee Health to the closest hospital (the "ER"). The Boy was in bad shape. So the ER doctor sought to transfer the Boy to Lee Health (the only Level II adult trauma center within five counties). The ER doctor spoke with Fonte about the transfer. Apparently, the Boy was in-and-out of "PEA," meaning he had electrical activity in his heart but no pulse. Given his precarious state and the fact he was so young, Fonte recommended the ER either not transfer the Boy or send him straight to Tampa, the nearest pediatric trauma center. But the ER doctor thought the Boy wouldn't make it to Tampa and wanted a transfer to Lee Health to stabilize the Boy before a transfer to Tampa. The parties dispute whether Fonte refused the transfer or simply provided her thoughts on why a transfer to Lee Health was unwise. In any event, the Boy was not transferred to Lee Health.

Six days after the November Call, Fonte took FMLA leave for high blood pressure, along with PTSD and flashbacks from a sexual assault she suffered in medical school.[2] Meanwhile—before Fonte's leave started—Lee Health began investigating the November Call. During her leave, Lee Health decided to fire Fonte. But it did not do so until the leave ended, when Dr. Venkat Prasad met with Fonte and terminated her without cause.

---

[2] At that time, Fonte was also experiencing increased stress and anxiety over worries about the November Call. (Doc. 38-5 at 42-43, 46).

Fonte brought a two-count Complaint against Lee Health and Prasad for FMLA retaliation and interference.  The Court dismissed the claims as to Prasad individually. (Doc. 30 at 10).  Now, Lee Health wants summary judgment.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  If "the movant adequately supports its motion," the nonmoving party must show "specific facts exist that raise a genuine issue for trial."  *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014) (citation omitted).

At this stage, courts view evidence and draw all reasonable inferences in the light most favorable to the nonmoving party.  *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).  All inferences are conjectural in part.  *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1326 (11th Cir. 1982).  Yet an "inference is not reasonable if it is 'only a guess or a possibility,' for such an inference is not based on the evidence but is pure conjecture and speculation."  *Id.* at 1324.  And "a mere scintilla of evidence" does not create a triable factual issue, so it is not enough for a nonmoving party to just say "the jury might, and legally could, disbelieve the moving party's evidence."  *Hinson v. Bias*, 927 F.3d 1103, 1115-16 (11th Cir. 2019) (internal quotation marks and citation omitted).

## DISCUSSION

Below, the Court addresses Fonte's request to exclude two declarations before turning to the merits.

### A. Exclusion

Fonte seeks to exclude two declarations Lee Health offered.  In response to summary judgment, a party can object to cited evidence and seek to limit its use under Rule 37(c)(1).  *Pitts v. HP Pelzer Auto. Sys., Inc.*, 331 F.R.D. 688, 692 (S.D. Ga. 2019). That Rule follows:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).  Rule 26(a) demands each party disclose "the name . . . of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(i).   And parties must timely supplement any incomplete or inaccurate disclosure.  Fed. R. Civ. P. 26(e)(1)(A).

Lee Health failed to identify two potential witnesses from its risk management department (Mary Lorah and Debbie Wiles).  (Docs. 44-7; 44-15; 44-16).   The nondisclosing party must establish its failure was substantially justified or harmless. *Ajomale v. Quicken Loans, Inc.*, No. 1:17-539-JB-MU, 2020 WL 1308333, at *4 (S.D. Ala. Mar. 19, 2020).  Typically, courts "consider the explanation for the failure to disclose the witness, the importance of the testimony, and the prejudice to the opposing party." *Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008) (citation omitted).  Here, the Court concludes the nondisclosure is substantially justified and harmless.

Lee Health explained it did not originally disclose Wiles and Lorah because they were not decision makers, and it only knew they might be witnesses after deposing Fonte's expert (which occurred after the discovery deadline).  At that point, says Lee Health, the extent of Fonte's dispute over the propriety of a transfer was clear and these witnesses were necessary for rebuttal about the March and November Calls.  On its own, this explanation might not be enough.  But the Court considers the other prongs too.

These declarations are important because they explain the risk management investigations into the March and November Calls and authenticate the transcripts of each.  Those Calls and the corresponding transfer issues are at the heart of the parties' dispute over the FMLA claims.   Likewise, Fonte would suffer no prejudice from considering these declarations.  Most of the information in the declarations is found elsewhere in the record, specifically Prasad's declaration and Fonte's own deposition.  To the extent that Wiles' declaration includes information about comparators, it rebuts Fonte's declaration about comparators and could be used solely for impeachment on that matter.  What is more, Fonte knew about Lorah and her involvement with investigating the March Call.  (Doc. 38-5 at 23).  And finally, had Lee Health disclosed Wiles and Lorah as witnesses, it is unlikely anything would be different.  According to Lee Health, Fonte deposed *no* witnesses, including Prasad (the decision maker who was originally a Defendant).  Given this, the nondisclosure did not prejudice Fonte, nor does considering the declarations at summary judgment.

Because Lee Health's failure to disclose was substantially justified and harmless, the Court denies Fonte's request to strike.  Having decided that matter, the Court turns

now to the merits.  While Fonte does not discuss her FMLA retaliation and interference claims separately, the Court does so for clarity.

## B.  Retaliation

Fonte alleges FMLA retaliation.  Not so, says Lee Health.  For retaliation claims, "an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001).  In other words, there must be intent to retaliate.  *Id.*  Where (as here) a plaintiff offers no direct evidence of retaliation, courts employ the handy-dandy *McDonnell Douglas* framework.[3]  *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006).

### 1. Applicable Framework

Before beginning, it is necessary to set straight the relevant framework.  Lee Health argues *McDonnell Douglas* applies.  Fonte appears to agree, hinging her entire argument on pretext.  But bookending that discussion, Fonte mentions it is Lee Health's burden to show her FMLA leave and reinstatement request "could not have been motivating factors" in her firing.  (Doc. 44 at 16).  That gives the Court pause.

The concept of discrimination as a "motivating factor" in a termination sometimes refers to a so-called "mixed-motive claim."  *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016).  This is important because "*McDonnell Douglas* is inappropriate for evaluating mixed-motive claims."  *Id.* at 1237.  And it is unsettled whether plaintiffs can even raise a mixed-motive FMLA retaliation claim.  *See Univ. of Tex. Sw.*

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*Med. Ctr. v. Nassar*, 570 U.S. 338, 360-63 (2013) (rejecting the motivating-factor test in Title VII retaliation claims for but-for causation); *see also Bartels v. S. Motors of Savannah, Inc.*, 681 F. App'x 834, 837-38, 840 (11th Cir. 2017) (refusing to answer the question in the FMLA context); *but see Egan v. Del. River Port Auth.*, 851 F.3d 263, 272-74 (3d Cir. 2017) (deferring to Department of Labor regulations that permit FMLA mixed-motive retaliation claims).  But the Court need not enter the fray on that unsettled issue because Fonte has not raised a mixed-motive claim here.

Fonte neither alleged nor argued she was terminated for legitimate and illegitimate reasons.  Instead, Fonte only contends Lee Health's proffered reasons were pretextual and illegitimate.  In other words, Fonte advances a single-motive theory of FMLA retaliation.  While Fonte mentions the phrase "motivating factor" in passing, she spends her whole brief arguing over pretext—an issue largely irrelevant to a mixed-motive claim. *E.g.*, *Quigg*, 814 F.3d at 1237-38 (explaining why *McDonell Douglas* and its pretext requirement are "fatally inconsistent with the mixed-motive theory"); *id.* at 1240 (Mixed-motive claims do not "suffer from *McDonnell Douglas*'s pitfall of demanding that employees prove pretext.").

To be sure, the Court did not expect Fonte to label her claim "as either a 'pretext' case or a 'mixed-motives' case" from the get-go.  *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 247 n.12 (1989) (plurality opinion).  Rather, it presumes Fonte argues for the legal theories on which she relies.  *See, e.g.*, *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." (alteration accepted and citation omitted)).  Yet the briefing only clarifies Fonte considers this a pretext (i.e., single

motive) case.  So the Court does not analyze this in a mixed-motive context.  *See, e.g.*, *Smith v. Vestavia Hills Bd. of Educ.*, 791 F. App'x 127, 130-31 (11th Cir. 2019) (A "plaintiff cannot make only a passing reference to a mixed-motive theory to sufficiently raise the issue." (internal quotation marks and citation omitted)); *White v. Dixie*, 741 F. App'x 649, 656 n.2 (11th Cir. 2018); *Herren v. La Petite Academy, Inc.*, No. 2:16-cv-01308-LSC, 2019 WL 2161250, at *10 n.8 (N.D. Ala. May 17, 2019) (same), *reversed on other grounds*, No. 19-12176, 2020 WL 3967811 (11th Cir. July 14, 2020).[4]

With that settled, the Court shifts to the *McDonnell Douglas* analysis.

### 2.  Prima Facie Case

A plaintiff must show: "(1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was causally related to a protected activity." *Pereda v. Brookdale Senior Living Cmty., Inc.*, 666 F.3d 1269, 1275 (11th Cir. 2012) (citation omitted).  Only the last prong is disputed.  (Doc. 38 at 13 n.5). A causal relationship means "the relevant decisionmaker was aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1271 (11th Cir. 2017) (internal quotation marks and citation omitted).

---

[4] Much of the litigation in this area focuses on the appropriate causation standard—but-for vs. motivating (or negative) factor.  *See Nelson v. Americold Logistics, LLC*, No. 1:18-cv-04846-SCJ-LTW, 2020 WL 1809744, at *3 (N.D. Ga. Feb. 11, 2020) (collecting cases), *report & recommendation adopted*, 2020 WL 1799945 (Mar. 4, 2020).  Neither the Supreme Court nor Eleventh Circuit have directly addressed the appropriate causation standard for FMLA retaliation claims.  *E.g.*, *id.*; *Coleman v. Redmond Park Hosp., LLC*, 589 F. App'x 436, 438 (11th Cir. 2014).  And no party makes argument in favor of either.  Moreover, to the extent that the Eleventh Circuit touched on motivating factor causation, it applied *McDonnell Douglas* to the claim all the same.  *Smith v. BellSouth Commc'ns, Inc.*, 273 F.3d 1303, 1314 (11th Cir. 2001). Regardless of which applies, the result here is identical because (as described below) Fonte failed to offer evidence that her leave played any part in her firing.  *See Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1309 (11th Cir. 2007).  And even if the burden remains on Lee Health to prove a same-decision defense, the Court finds it made that showing.  *See Bartels*, 681 F. App'x at 840.

Typically, "close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Brungart v. BellSouth Telecomm.'s, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).  As it relates to the causation prong, temporal proximity is "measured from the last day of an employee's FMLA leave until the adverse employment action at issue occurs." *Gulf Coast*, 854 F.3d at 1272.

Despite bearing the burden for this issue, Fonte makes no argument on it.  If the Court can infer one, Fonte contends temporal proximity is enough to show a causal connection.  (Doc. 44 at 24-25).  The timing between Fonte's return from leave and her firing could have hardly been any closer.  She was fired one day after clearance to return from leave and the same day she could return under Lee Health's policies.  And Lee Health set the meeting to fire Fonte within an hour of receiving her medical clearance. That is usually enough to show a connection.  *Hurlbert*, 439 F.3d at 1298.

But there are exceptions to the general rule.  *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010).  One such situation is for an employer who "contemplates an adverse employment action before an employee engages in protected activity." *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006).  In that circumstance, "temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation." *Id.*; *see also Salem v. City of Port St. Lucie*, 788 F. App'x 692, 696 (11th Cir. 2019).  As courts explain, "An employer 'proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality.'" *Pecora v. ADP, LLC*, 232 F. Supp. 3d 1213, 1221 (M.D. Fla. 2017) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001));

*see also Brown v. Diversified Distrib. Sys., LLC*, 801 F.3d 901, 908 (8th Cir. 2015) (applying this rule to a decision that was contemplated, but not yet decided when plaintiff requested leave).

Lee Health disciplined Fonte for refusing a transfer over six months before she took FMLA leave.  In fact, Fonte testified Lee Health considered terminating her then. (Doc. 38-5 at 44-45).  As a result, Lee Health issued Fonte the Final Warning, explaining a similar offense would be "grounds for termination."  (Doc. 38-2 at 27-28).   After the November Call, Lee Health began investigating for a violation of its transfer policies.

Fonte requested FMLA leave on November 18, 2018.[5]  (Doc. 44-3 at 6).  This was six days after the November Call.  During that span, a member of Lee Health's risk management department contacted and met with Fonte about the November Call.  (Doc. 38-5 at 38-40).  At the meeting, Fonte provided literature to support her position that transferring the Boy would have been medically improper.  (Doc. 38-5 at 38).   And afterward, Fonte considered retaining an expert (who she later hired for this case) to discuss the transfer with risk management.  Also, Fonte spoke with someone from Lee Health's legal department, who explained Lee Health's position that trauma doctors must accept all transfers.  (Doc. 38-5 at 38-39, 46).  At that point, Fonte had some inkling about a potential disciplinary issue brewing with the November Call.  (Doc. 38-5 at 40, 42-43).

All this occurred *before* Fonte took FMLA leave.  In other words, the investigation that led to Fonte's firing was underway when she engaged in protected activity.   It continued during Fonte's leave, with risk management finishing its investigation in late November and Prasad holding conference calls to discuss the transfer (on November 19,

---

[5] It is unclear exactly when Fonte asked for leave.  In her deposition, Fonte testified to requesting leave on November 19 or 20.  (Doc. 38-5 at 45).  But the Court uses the earliest date as it is most helpful for Fonte.

2018) and Fonte's termination (on December 18, 2018).  (Docs. 38-2 at 5-6; 44-7 at 4).

Because, however, Lee Health was investigating and contemplating Fonte's firing before

her FMLA leave, temporal proximity alone is not enough to show a causal causation.  *See*

*Drago*, 453 F.3d at 1308; *Salem*, 788 F. App'x at 696; *Cotton v. Cracker Barrel Old*

*Country Store, Inc.*, 434 F.3d 1227, 1232 (11th Cir. 2006).

  In the Title VII context, the Eleventh Circuit explained "anti-retaliation provisions

do not allow employees who are already on thin ice to insulate themselves against

termination or discipline by preemptively making a discrimination complaint."  *Alvarez v.*

*Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1270 (11th Cir. 2010).  Likewise, it reasoned FMLA

does not protect deficient employees from termination for previous misconduct their

employers discover while they are on leave.  *Schaaf v. Smithkline Beecham Corp.*, 602

F.3d at 1236, 1241-43 (11th Cir. 2010).  To hold otherwise would make FMLA leave a

get-out-of-jail-free break that deficient employees could take with the hope misconduct

was discovered, producing a "laughable result."  *Id.* at 1242-43.  The same is true here.

FMLA leave is not an impenetrable shield from a termination an employer is already

investigating and contemplating.  And despite bearing the burden, Fonte offers neither

evidence nor argument to make a showing on this prong.

  Thus, the Court concludes Fonte did not make a prima facie case of FMLA

retaliation.  All the same, the Court continues for the sake of argument.

  *3.  Pretext*

  When plaintiff makes a prima-facie showing, the burden shifts for defendant to

"articulate a legitimate, nondiscriminatory reason" for the firing.  *Gulf Coast*, 854 F.3d at

1271 (citation omitted).  An "employer's burden is merely one of production; it 'need not

persuade the court that it was actually motivated by the proffered reasons.'" *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (citation omitted).  Rather, the reason must simply be "one that might motivate a reasonable employer."  *Id.* at 1030.

Lee Health contends it fired Fonte for refusing a transfer on the November Call, which violated her Final Warning and its transfer policy.  And it offers Prasad's declaration to support its decision.  Because the proffered reasons could motivate a reasonable employer, Lee Health met its burden.  *Id.*

Fonte disagrees, arguing Lee Health's reasons are illegitimate.  (Doc. 44 at 28-30).  This argument is a nonstarter.  Essentially, Fonte asserts Lee Health's policies cannot stand because they conflict with the Hippocratic Oath along with Florida law as it relates to transfers and medical malpractice.  To start, Lee Health's reasons need not be persuasive, it just has a burden of production.  *Chapman*, 229 F.3d at 1024.  What is more, an "*e.g.*" does not begin to signify how often courts emphasize we "do not sit as a super personnel department" second guessing employers' business decisions.  *Id.* at 1030 (citation omitted).  Similarly, this Court isn't a medical review board deciding when a hospital's policies should give way to the best interests of a patient and insulate a doctor from discipline.  *See id.*  Whether Lee Health's policies are unwise or insignificant compared with Fonte's duties to patients is not determinative.  Every employer has the "right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules."  *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984).  In the end, an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for

a discriminatory reason." *Id.*  So Lee Health met its burden and Fonte's argument falls flat.

After defendant provides an acceptable reason, the burden again reverts to plaintiff for a showing "that the supposedly legitimate reason was in fact a pretext designed to mask illegal discrimination." *Gulf Coast*, 854 F.3d at 1271.  "To show pretext, [plaintiff] must 'come forward with evidence . . . sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Id.* at 1274 (quoting *Chapman*, 229 F.3d at 1024).  Whether the employer's decision was wise or fair is irrelevant. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999).  Instead, the pretext inquiry "centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Alvarez*, 610 F.3d at 1266.  So "quarreling with the wisdom" of the reason will not do. *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation omitted).

"A reason is not pretext for retaliation 'unless it is shown *both* that the reason was false, *and* that retaliation was the real reason.'" *Gogel v. Kia Motors Mfg. of Ga., Inc.*, No. 16-16850, 2020 WL 4342677, at *10 (11th Cir. July 29, 2020) (en banc) (alterations accepted) (quoting *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007)).  To do so, the "employee must meet that reason head on and rebut it." *Chapman*, 229 F.3d at 1030.  Evidence "significantly probative" of pretext is necessary. *Brooks*, 446 F.3d at 1163 (citation omitted).  One can "establish pretext by demonstrating 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a

reasonable factfinder could find them unworthy of credence.'" *Gulf Coast*, 854 F.3d at 1274 (citation omitted).

Fonte provides thirteen points on pretext, but several are mere reargument of the same contention.  Condensing the overlap, the Court addresses eight issues: (1) Fonte was terminated without cause; (2) EMTALA; (3) Lee Health did not fire Fonte before she took leave or sought reinstatement; (4) posttermination and lack of pretermination documents; (5) comparators; (6) Fonte's unblemished record; (7) Lee Health knowingly terminated Fonte when she exercised her FMLA rights (i.e., temporal proximity); and (8) Lee Health failed to follow its own policies.

First, Fonte contends that her termination without cause shows the proffered reasons are pretextual because (if they were true) she would have been terminated for cause.  In sum, the reasons Lee Health proffers contradict Prasad's decision to fire Fonte without cause.  Thus, says Fonte, a jury could infer retaliation.  An employer's "shifting reasons" may support an inference of discrimination by calling the reasons into doubt.  *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194-95 (11th Cir. 2004).  "Nonetheless, additional, but undisclosed, reasons for an employer's decision do not [always] demonstrate pretext."  *Landolfi v. City of Melbourne, Fla.*, 515 F. App'x 832, 835 (11th Cir. 2013) (citing *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998)).  So while inconsistencies "may be evidence of pretext, where the explanations are not necessarily inconsistent, they do not suggest pretext."  *Pittman v. Johnson & Johnson Vision Care, Inc.*, No. 19-13845, 2020 WL 3121301, at *5 (11th Cir. June 12, 2020) (citing *Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1458 (11th Cir. 1997)).

Fonte fails to show Lee Health's reasons were inconsistent, implausible, or contradictory.  Lee Health started investigating the November Call for a transfer issue before Fonte took leave.  While Prasad fired Fonte without cause, his declaration explains he did so out of respect for Fonte's service and to provide her with severance pay.  Thus, Prasad declares the without cause characterization was an administrative matter rather than a reason for Fonte's firing.  Fonte offers nothing to contradict Prasad's explanation.  Nor does Fonte's employment contract.

Under the contract, Lee Health could immediately fire Fonte and pay her thirteen weeks severance, which it did.  (Doc. 44-9 at 11).  What is unclear is whether Lee Health would pay any severance if it fired Fonte for cause because the contract somehow does not address that.  It is also unclear whether the for-cause provision was even in effect; it expired in 2006 and none of the contractual amendments in the record alter that provision. (Doc. 44-9 at 11).  Neither party addresses this.  But assuming it was still in effect, the provision defines cause in a separate section, allowing Lee Health to immediately fire Fonte for disciplinary reasons.  (Doc. 44-9 at 12).  Again, that section does not discuss severance pay.  The closest any part of the contract comes to addressing this issue is in the expired for-cause section, which simply says Fonte is entitled to severance if terminated "without cause."  (Doc. 44-9 at 11-12).  So at most, the contract is ambiguous and does not contradict Prasad's explanation he merely characterized the firing as without cause to pay severance.

In any event, the nuances of the contractual provisions are not necessarily determinative.  Rather, what is important here is what Prasad thought and intended.  *See Alvarez*, 610 F.3d at 1266-67 ("[P]retext centers on the employer's beliefs, not the

employee's beliefs and, to be blunt about it, not on reality as it exists outside the decision maker's head."). And in his declaration, Prasad explained he believed the only way to provide severance was to classify the termination as not for cause. As discussed, this explanation is neither inconsistent nor implausible. Even if Prasad were mistaken about the legal conclusions to draw from the contract, nothing in the record rebuts his sworn declaration he believed a without-cause termination was the only way to provide severance.

Second, Fonte contends she did not commit an EMTALA violation, which Lee Health impliedly confirmed because it never filed a report with the Agency. But whether an EMTALA infraction occurred is irrelevant. Prasad and risk management both concluded the November Call violated Lee Health's transfer policy (not EMTALA) in violation of the Final Warning. (Doc. 38-2 at 6-7). In response, Fonte points to her supervisor's conclusion at some point that the November Call breached EMTALA. (Doc. 44-10). Yet nothing suggests this served as a basis for Fonte's termination or Lee Health ever decided that issue. Nor has Lee Health relied on EMTALA as its nondiscriminatory reason during this case, contrary to Fonte's contentions. Rather, the only evidence on the reason for her firing comes from Prasad's declaration. He stated EMTALA was not a deciding factor in the firing, explaining other considerations factor into an EMTALA inquiry. And Prasad relied on his belief the November Call violated Fonte's Final Warning and Lee Health's policy. (Doc. 38-2 at 5-7). Fonte offers no evidence to meet that explanation or cast doubt on it. While Fonte retained an expert to opine her actions did not violate EMTALA, he did not review Lee Health's transfer policy and was unaware of the Final Warning. So this opinion does not impact Lee Health's reasons. What is more,

if—like Fonte and her expert argue—Fonte did not violate EMTALA, then there was nothing for Lee Health to report.

Third, Fonte says there is an inference of pretext because Lee Health failed to fire or discipline her before she sought reinstatement. Not so. Lee Health's risk management began investigating the November Call before Fonte's FMLA leave. And Lee Health does not contend it fired Fonte before the leave, rather it was contemplating and investigating that possibility. While the risk management investigation ended in late November, the decision to terminate Fonte appears to have occurred on December 18, 2018. (Doc. 44-7 at 4). Fonte says this cannot be true because she was not suspended or placed on administrative leave pending the investigation. Yet Lee Health did not have to do so while it decided how to proceed. Fonte also took leave six days after the November Call. So Lee Health had no reason to re-place Fonte on leave or suspend her. Finally, Fonte points to her placement on the January and March 2019 on-call schedule as evidence Lee Health's timeline doesn't add up. Yet her own declaration shows the discussion over those schedules happened before Lee Health decided to terminate Fonte. (Doc. 44-3 at 6). And while Fonte points out she received a release to return to work on December 19, 2018, she did not inform Lee Health until January 4, 2019. (Docs. 38-5 at 48; 44-3 at 6). When she did, Lee Health immediately scheduled the meeting with Prasad to fire Fonte.

Fourth, Fonte points to posttermination and a lack of pretermination documents to support pretext.

As for the posttermination documents, there is no reasonable inference of pretext to be drawn from them. They are credentialing forms respectively dated four and eight months after Fonte's termination. One states Fonte had no "quality assurance or peer

review problems necessitating any disciplinary actions" within two years. (Doc. 44-17). The other says Fonte's medical privileges were never limited because of "corrective action." (Doc. 44-18). Both say Fonte was still on leave months after her firing. At most, these are forms from Lee Health's credentialing department that contain errors. But they cast no doubt on Lee Health's proffered reasons or suggest Fonte's termination was related to FMLA. Even if these forms should have included employment disciplinary history (which is unclear because Fonte provides no context or explanation of them), neither references the Final Warning. This undercuts any notion these forms somehow show pretext by not referencing Fonte's termination related to the November Call.

As for lack of pretermination paperwork, the contention falls flat. Fonte speculates Lee Health should have documents related to her investigation and firing. Because Lee Health didn't produce any of those documents in discovery, Fonte says a reasonable jury could find pretext. Yet Fonte fails to point to any law allowing for a negative inference in such a way. Rather, a reasonable inference must be based on more than speculation and conjecture. *E.g.*, *Glasscox v. City of Argo*, 903 F.3d 1207, 1213 (11th Cir. 2018). To some extent, Fonte seems unhappy with Lee Health's document production. Yet she filed no motions to compel or deposed any witnesses. Likewise, Fonte offers nothing to show Lee Health did not follow its normal policies or practices in investigating or terminating her.

Fifth, according to Fonte, two comparators were treated better.[6] A plaintiff "must show that she and her comparators are similarly situated in all material respects." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1226 (11th Cir. 2019) (en banc) (internal

---

[6] Fonte's declaration mentions another potential comparator (Dr. Garr), but she makes no argument on him. In any event, the declaration provides no information to conclude Fonte and Garr were similarly situated.

quotation marks omitted).  Comparators should have (1) "engaged in the same basic conduct (or misconduct)"; (2) "been subject to the same employment policy, guideline, or rule"; (3) usually (but not always) "been under the jurisdiction of the same supervisor"; and (4) a similar "employment or disciplinary history." *Id.* at 1227-28.

To start, Henn is not a valid comparator.  He was a neurosurgeon—not a trauma surgeon.  (Doc. 44-5 at 1).  So he was neither in a similar position nor subject to the same policies as Fonte.  (Doc. 47-1).  Further, Henn never disclosed when he refused transfers.  If the refusals were before the March Call, Henn's conduct was dissimilar because he did not receive training afterward like Fonte.  (Doc. 47-1).

Likewise, Vieux is not a proper comparator.  Fonte declared Vieux refused six trauma transfers (including one child) in late 2018 without facing any discipline.  (Doc. 44-3 at 3-4).  This is based on Fonte's unexplained "personal knowledge."  (Doc. 44-3 at 3-4).  That said, Wiles disagreed after reviewing the trauma call logs for late 2018 and finding no record of Vieux refusing any critical patient needing stabilization.  (Doc. 38-3 at 3).  While a plaintiff's "self-serving statements based on personal knowledge or observation can defeat summary judgment," *United States v. Stein*, 881 F.3d at 853, 857 (11th Cir. 2018), it does not stand when based on conclusory allegations or blatantly contradicted by the record.  *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013).  Fonte fails to describe how she knows Vieux refused transfers besides her vague "personal knowledge" statement.  Moreover, Lee Health offers Wiles rebuttal based on review of call logs.  Still, Lee Health did not tender those logs to contradict Fonte's statement.  So the Court considers Fonte's declaration as comparator evidence for Vieux's transfer history.

Even so, Vieux and Fonte are still not similarly situated as they did not have similar disciplinary history.  Fonte was under a Final Warning for a previous transfer violation.  Nothing reflects Lee Health ever disciplined Vieux.  More important, Wiles stated there was never a complaint against Vieux for refusing a transfer.  (Doc. 38-3 at 3-4).  And the record fails to reveal Lee Health knew Vieux refused any transfers.  In fact, Wiles declaration shows the opposite.  So Lee Health never investigated or, in turn, disciplined Vieux.  Whereas both of Fonte's investigations and discipline followed complaints filed by the transfer center or another hospital.  (Doc. 38-3 at 1-2; 38-4 at 2).  Thus, there cannot be a reasonable inference Vieux was similarly situated and differently treated because Lee Health only knew about and investigated Fonte's misconduct.  As the Eleventh Circuit says, "proffered comparators' actions are only relevant if it is shown that the decision maker knew of the prior similar acts and did not discipline the rule violators."  *Summers v. City of Dothan, Ala.*, 444 F. App'x 346, 348, 350 (11th Cir. 2011); *see also Jones v. Gerwens*, 874 F.2d 1534, 1541-42 (11th Cir. 1989); *Landry v. Lincare, Inc.*, 579 F. App'x 734, 737-38 (11th Cir. 2014); *Frazier v. Safelite Grp., Inc.*, No. 3:17-cv-1366-J-32MCR, 2019 WL 2372257, at *4 (M.D. Fla. June 5, 2019).

Sixth, Fonte argues her record was unblemished.  This is false.  Fonte was on Final Warning from the March Call when she was fired.

Seventh, temporal proximity supports pretext, says Fonte.  While this factor can support pretext, it is insufficient on its own.  *E.g.*, *Thomas v. Dolgencorp, LLC*, 645 F. App'x 948, 951 (11th Cir. 2016).  Because nothing else in the records lends credence to Fonte's pretext argument, temporal proximity is not enough by itself.

And finally, Fonte contends Lee Health failed to follow its own transfer policy.  The policy requires Lee Health doctors to "accept an appropriate transfer of an individual with an emergency medical condition who requires those capabilities if Lee Health hospitals have the capacity to treat the individual." (Doc. 38-2 at 10).  Fonte contends this transfer was not appropriate, so she did not have to accept it.  Yet this is mere disagreement with Lee Health's decision.  Prasad determined Fonte should have accepted the transfer because Fonte could not supplant her judgment for the ER doctor's and Lee Health could treat the Boy.  (Doc. 38-2 at 5-6).  As Lee Health argues, it does not matter whether this determination was prudent or even correct.  *See Rojas*, 285 F.3d at 1342 ("We are not interested in whether the conclusion is a correct one, but whether it is an honest one."); *Damon*, 196 F.3d at 1363 n.3 ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct."); *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1313 (11th Cir. 2018).

Fonte also contends the policy requires the transferring physician to make medical determinations and written certifications, along with reporting violations.  Yet Fonte's contentions about whether the ER doctor (who was not a Lee Health employee) complied with the policy do not rebut Lee Health's assessment that Fonte violated it.  As for the reporting requirements, the parties dispute whether the transfer center followed the proper procedure for a refused transfer during the November Call.  Even so, the transfer center reported the Call the next day (in accordance with the policy), and Lee Health investigated shortly afterward.

For those reasons, Fonte failed to show Lee Health's proffered reasons were false, inconsistent, or implausible.  An employee must offer evidence or show inconsistencies from which a reasonable jury could find the employer's reason should not be believed.  At bottom, Fonte must show FMLA leave compelled her firing.  Even if Fonte could cast some doubt on the falsity of Lee Health's reasons, she offers no evidence suggesting retaliation was the true reason.  *See Hornsby-Culpepper*, 906 F.3d at 1312 (The reason is not pretextual "unless it is shown both that the reason was false, and that discrimination was the real reason." (citation omitted)).  Yet nothing in the record—besides pure speculation and timing—hints at FMLA factoring into the decision in any way.

Not even Fonte testified FMLA was part of the decision.  In her deposition, Fonte says she thought Lee Health fired her because she was a "squeaky wheel" in contract negotiations and needed an ADA accommodation upon her return from leave.  (Doc. 38-5 at 43-45, 49-50, 53-54).  While Fonte spoke about the ADA issue through FMLA, she clarified her suspicion was Lee Health fired her (in part) because it did not want to accommodate her need for shorter on-call assignments.  Perhaps Fonte's testimony created a dispute over whether Lee Health retaliated against for her activity negotiating doctor contracts or requested ADA accommodation.  But Fonte only sued under FMLA.  So retaliation is relevant instead of failure to accommodate.

There is no other evidence in the record supporting a reasonable inference of FMLA retaliation.  In fact, the only testimony surrounding Fonte's leave suggested Lee Health had no problem with it.  Human resources provided Fonte with the information to take leave, and it was approved without an issue.  Nobody commented about it or treated Fonte different.  Her supervisor supported Fonte's need to take time off.  (Doc. 38-5 at

47).  And Fonte took FMLA leave three previous times with no consequence.  (Doc. 38-5 at 47).  To be sure, the Court cannot weigh this against conflicting evidence or testimony suggesting FMLA was the reason for the termination.  Yet the problem for Fonte is a lack of any other evidence to support that conclusion.

Because Fonte failed to carry her burden on pretext, her retaliation claim fails.

### 4. Convincing Mosaic

*McDonnell Douglas* is not the only way to prove a circumstantial retaliation case.  *E.g.*, *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).  Another way is to present "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker."  *Id.* (citation and footnote omitted).  Fonte merely mentions the convincing mosaic standard in passing without making argument on it.  (Doc. 44 at 18).  Nevertheless, to whatever extent that Fonte advances a convincing mosaic argument based on the same reasons she offers for pretext, the contention fails.  *See Hutchinson v. Sec'y, Dep't of Veterans Affairs*, 766 F. App'x 883, 889 (11th Cir. 2019) (rejecting the alternative convincing mosaic theory argument that merely reiterated the same arguments as failed pretext position).[7]  As one court noted, a plaintiff cannot simply rearrange discarded pretext tiles into a convincing evidentiary mosaic.  *Flowers v. Troup Cty., Ga., Sch. Dist.*, 1 F. Supp. 3d 1363, 1381 (N.D. Ga. 2014).  If necessary to reach this issue, the result is the same and Fonte's evidence does not support a reasonable inference of FMLA retaliation.

---

[7] *See also Reed v. Forney Indus., Inc.*, 800 F. App'x 782, 788 (11th Cir. 2020); *Mitchell v. Pilgrim's Pride Corp.*, No. 19-13173, 2020 WL 2838557, at *7 (11th Cir. June 1, 2020); *Robinson v. Colquitt EMC*, 651 F. App'x 891, 897 (11th Cir. 2016); *Alsobrook Fannin Cty., Ga.*, 698 F. App'x 1010, 1014-15 (11th Cir. 2017); *Mojica v. Fla. Dep't of Revenue*, 704 F. App'x 834, 837 (11th Cir. 2017).

## C. Interference

Fonte failed to address her FMLA interference claim.  She only made argument on pretext.   And it is well established *McDonnell Douglas* does not apply to FMLA interference claims.  *E.g.*, *Herren*, 2020 WL 3967811, at *4-5 (reversing an order that relied on *McDonnell Douglas* for an interference claim).  Even so, the claim fails on the merits.

"To establish a claim of FMLA interference, 'an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied.'" *Vira v. Crowley Liner Servs., Inc.*, 723 F. App'x 888, 895 (11th Cir. 2018) (quoting *Strickland*, 239 F.3d at 1206-07).  For interference, the employee "does not have to allege that his employer intended to deny the right; the employer's motives are irrelevant." *Strickland*, 239 F.3d at 1208.

An employer may succeed by showing it would have refused to reinstate an employee regardless of FMLA leave (i.e., leave was not the proximate cause of the firing). *Spakes v. Broward Cty. Sheriff's Office*, 631 F.3d 1307, 1309-10 (11th Cir. 2011); *Schaaf*, 602 F.3d at 1241; *Strickland*, 239 F.3d at 1208.  To do so, the employer must establish "it would have discharged an employee 'for a reason wholly unrelated to the FMLA leave.'" *Spakes*, 631 F.3d at 1310 (quoting *Strickland*, 239 F.3d at 1208).  This is an affirmative defense and the burden is on defendant to make the showing.  *Herren*, 2020 WL 3967811, at *4.

Lee Health demonstrated it would have made the same decision regardless of FMLA leave.  Again, Lee Health contends it fired Fonte for violating the Final Warning and transfer policies, which are wholly unrelated to FMLA.  The Final Warning occurred

months before the leave with Lee Health warning Fonte that a similar incident would lead to her termination.  And Lee Health started investigating the November Call before the protected activity.  Even before her leave began, Fonte had notice Lee Health was at least looking into the Call.  That investigation continued into Fonte's leave and Lee Health decided to fire Fonte in December.  Prasad declared this decision did not consider leave.  And when Fonte requested reinstatement, Lee Health immediately contacted her to schedule the meeting with Prasad.  Because Lee Health showed neither FMLA leave nor the request for reinstatement were the proximate cause of its decision, the interference claim fails.

Accordingly, it is now

**ORDERED:**

(1)  Defendant's Motion for Summary Judgment (Doc. 38) is **GRANTED**.

(2)  The Clerk is **DIRECTED** to enter judgment, terminate all pending motions or deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida this 11th day of August, 2020.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record